**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| VAUGHN ANDERSON, | : | |
|     Plaintiff, | : | |
| | : | |
|   v. | : | **CIVIL ACTION NO. 26-CV-1228** |
| | : | |
| CAPT. PRIFTI, *et al.*, | : | |
|     Defendants. | : | |

**MEMORANDUM**

**HENRY, J.**                                                        **April 20, 2026**

    *Pro se* Plaintiff Vaughn Anderson brings this civil action pursuant to 42 U.S.C. § 1983, naming numerous individual Defendants, asserting claims related to his pretrial detention within the city of Philadelphia Department of Prisons. Anderson also seeks leave to proceed *in forma pauperis* and appointment of counsel. For the following reasons, the Court will grant Anderson's Motion for Leave to Proceed *In Forma Pauperis* (ECF No. 3), deny the Motion to Appoint Counsel (ECF No. 4), and dismiss the Complaint (ECF No. 1) in part. Anderson will be granted an opportunity to file an amended complaint before the Court takes any other action.

## I.    FACTUAL ALLEGATIONS[1]

    Anderson asserts that on March 8, 2025, while he was housed at Riverside Correctional Facility, CO Bolden "stood on top tier just above [him] yelling insults and spitting on him." (Compl. at 4.) Bolden then "call[ed] an emergency response claiming Anderson spit on her."

---

[1] The facts set forth in this Memorandum are taken from Anderson's Complaint (ECF No. 1 ("Compl.")). The Court adopts the pagination assigned to the Complaint by the CM/ECF docketing system. Grammar, spelling, and punctuation errors are cleaned up where necessary. Additionally, the Court includes facts reflected in publicly available state court records, of which this Court may take judicial notice. *See Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

(*Id.*)  Anderson was then handcuffed by Sergeant Foster, CO Mendez, and a John Doe CO, and they transported Anderson to the medical department "without struggle."  (*Id.*)  Anderson alleges that before they got to the medical department, Foster "began punching Anderson in the face repeatedly while Anderson was still handcuffed," which "caused Anderson's head to collide" with the wall and doorway and opened a wound on his scalp.  (*Id.*)  Foster then continued his assault in the medical exam room, knocking Anderson to the floor while he was still handcuffed.  (*Id.*)  Anderson alleges that CO Mendez and the John Doe CO failed to intervene in Foster's assault.  (*Id.*)  After a doctor cleaned and bandaged Anderson's head, two COs photographed his injuries and took his statement, and he was then "rushed" to two different hospitals: one to place five staples to close his scalp wound, and the second for surgery on a broken jaw, which was then wired shut.  (*Id.*)  Anderson asserts that at a disciplinary hearing on March 18, 2025, he was found not guilty of a misconduct charge initiated by Bolden.  (*Id.*)

Anderson stayed in the Prison Health Services Wing ("PHSW") for "2 to 3 weeks" and then was returned to Riverside.  (*Id.*)  He asserts that Foster "continued to threaten and antagonize" him by "do[ing] tours and mak[ing] comments."  (*Id.*)  Anderson states that "a federal investigator did a safety tour," after which Captain Medina "informed" Anderson that "action would be taken."  (*Id.*)  Anderson asserts that a "lack of medical treatment resulted in [a] nearly fatal infection, emergency surgery, and another stay at [PHSW]," during which he "was not allowed recreation or access to [the] law library, which directly affected trial as Anderson was a *pro se* litigant."  (*Id.*)  Anderson's prescribed "special diet" was denied by unnamed persons despite his filing grievances and sick call slips.  (*Id.* at 5.)  "Anderson was eventually transferred from protective custody in retaliation for complaints, resulting in loss of job and being placed in unsafe conditions."  (*Id.*)

2

On some unspecified date, Anderson was taken to the hospital for a follow-up visit "to determine if [the] infection cleared," and a doctor continued his course of antibiotics and "updated special diet to compensate for difficulty eating." (*Id.*)  However, when Anderson was transferred to Curran-Fromhold Correctional Facility ("CFCF"), medical staff member Bruce Sobers "refused to update Anderson's diet and refused to see Anderson for medical screening concerning health issues," which Anderson alleges "resulted in less than adequate meals both painful and difficult to consume." (*Id.*)

Anderson alleges that Lieutenant Flippen "denied protective custody . . . after [Anderson] report[ed] fear for safety because of pending criminal charges and staff and inmate misconduct." (*Id.*)  Anderson states that "an altercation took place" on November 21, 2025, where he "was forced to defend himself," and after which he was taken to the restricted housing unit ("RHU"). (*Id.*)  Anderson appears to assert that he filed a grievance about the denial of protective custody, but he was told by the warden in response that he "would have to wait" until he had served his "punitive time" that resulted from "disciplinary action." (*Id.*)

When he arrived at the RHU, CO Coley and Sergeant McManus "confiscated Anderson's legal papers against policy and custom for retaliatory purposes." (*Id.*)  He states that a response to an unspecified grievance from "YesCare A.D.A." was withheld from him by Sergeant Kilson, and that this document and his confiscated legal papers would have "help[ed him] acquire full special diet but [he] was denied access to both." (*Id.*)  He further alleges that "despite upcoming trial access to legal papers and law library was denied." (*Id.*)  He states that he "notified Lt. McKenzie of need to access courts, contact lawyer, and access law library." (*Id.*)  He then makes unclear allegations about continued withholding of his "legal papers" and his ability to contact his lawyer, which may have occurred only through a social worker leaving a message.

3

(*Id.*)  He claims that his "phone account [was] restricted" from November 21, 2025, to January 12, 2026, and although he "began trial" from December 5 to December 11, 2025, his "ability to contact anyone was thwarted," despite his "disciplinary time" ending on December 5.[2]  (*Id.*)

Anderson states that between December 5 and 7, 2025, he told CO T. Adams, Sergeant Abrahams, and Lieutenant Bishop that he was in fear and wanted protective custody, and that he showed them the earlier grievance response from the warden indicating that he could not be placed in protective custody until after he served his disciplinary sentence in the RHU; his request was denied.  (*Id.* at 6.)  After he finished serving his time in disciplinary and "pre-population," he was returned to the same cell block in CFCF where he had previously informed Lieutenant Flippen that he wanted to be placed in protective custody.  (*Id.*)  Anderson alleges that "within 48 [hours he] was approached by cellmate in regards to pending charges, which resulted in an incident where [he] was again forced to defend himself."  (*Id.*)  He asserts that "without an investigation [he] was transported to medical where he reported injuries, which were documented but not treated."  (*Id.*)  At a disciplinary hearing on December 15 conducted by Captain Prifti and CO Harris, Anderson asserted that he should have been placed in protective custody but instead he "was found guilty of misconduct again for defending himself," and "was given 30 days for self defense."  (*Id.*)  Harris "provided inmate disciplinary appeal, which Anderson completed and returned [the next day] but [it] was never answered."  (*Id.*)

Anderson also alleges that his "special diet continued to be denied sometimes partially and most times totally denied" while he was in the RHU after the November 21 incident.  (*Id.* at

---

[2]  Publicly available state court records indicate that Anderson was tried and convicted in December, 2025, and sentenced in February, 2026, on charges of unlawful sexual contact with a minor, corruption of minors, and indecent assault.  *See Commonwealth v. Anderson*, No. CP-51-CR-0000016-2025 (C.P. Phila.)

5.)  Following the December incident, he asserts that CO Hawkins, CO Brapham, and CO Watson "refused to provide special diet, recreation, and law library." (*Id.* at 6.)  He asserts that the "special diet tag was updated" on December 19 to "mak[e] the request of diet simpler when not fully provided but CO Hawkins, CO Brapham, [and] CO Watson always refuse to provide full diet and are usually the CO in charge when these issues arise." (*Id.*)  He states that he was provided with his special diet beginning the week of December 29, 2025, and he was afforded one to two hours of library time once a week, which he asserts was "not adequate for preparing for extraordinary relief." (*Id.*)  He states without specificity as to dates or individuals that "there is still no way to contact lawyer," "doctor appointment missed, medical screening still being denied[, and] health and recovery in danger [of] being neglected." (*Id.*)

Anderson asserts claims against sixteen separate Defendants for, variously, excessive force, failure to intervene and protect him from violence by guards or inmates, retaliation, denial of access to courts, and deliberate indifference to his medical needs. (*Id.* at 7-8.)  He seeks declaratory and injunctive relief, as well as money damages in an unspecified amount. (*Id.* at 9.)

## II.   STANDARD OF REVIEW

Because it appears that Anderson is incapable of paying the fees to commence this civil action, the Court will grant leave to proceed *in forma pauperis*.[3]  Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss Anderson's Complaint if it fails to state a claim. The Court applies the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), that is, whether a complaint contains "sufficient factual matter, accepted as true, to state a claim to relief

---

[3]  Because Anderson commenced this case while incarcerated, he will be obligated to pay the full filing fee in installments in accordance with the Prison Litigation Reform Act. *See* 28 U.S.C. § 1915(b).

that is plausible on its face," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted); *Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021).  At the screening stage, the Court will accept the facts alleged in the *pro se* Complaint as true, draw all reasonable inferences in the Plaintiff's favor, and "ask only whether that complaint, liberally construed, contains facts sufficient to state a plausible claim."  *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (cleaned up), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197, 204 (3d Cir. 2024).  Conclusory allegations do not suffice.  *See Iqbal*, 556 U.S. at 678.

As Anderson is proceeding *pro se*, the Court construes the allegations in the Complaint liberally.  *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).  The Court will "apply the relevant legal principle even when the complaint has failed to name it."  *Id.*  However, "pro se litigants still must allege sufficient facts in their complaints to support a claim."  *Id.* (quoting *Mala*, 704 F. 3d at 245).  An unrepresented litigant "cannot flout procedural rules—they must abide by the same rules that apply to all other litigants."  *Id.*

In that regard, a complaint may be dismissed for failing to comply with Federal Rule of Civil Procedure 8.  *Garrett v. Wexford Health*, 938 F.3d 69, 91 (3d Cir. 2019).  Rule 8 requires a pleading to include a "short and plain statement showing that the pleader is entitled to relief," as well as a statement of the court's jurisdiction and a demand for the relief sought.  Fed. R. Civ. P. 8(a).  In determining whether a pleading meets Rule 8's "plain" statement requirement, the Court should "ask whether, liberally construed, a pleading 'identifies discrete defendants and the actions taken by [the named] defendants' in regard to the plaintiff's claims."  *Garrett*, 938 F.3d at 93 (citation omitted).  "Naturally, a pleading that is so vague or ambiguous that a defendant cannot reasonably be expected to respond to it will not satisfy Rule 8."  *Id.*  (cleaned up).  The

important consideration for the Court is whether, "a pro se complaint's language . . . presents cognizable legal claims to which a defendant can respond on the merits." *Id.* at 94.

## III.   DISCUSSION

### A.   Declaratory and Injunctive Relief

Anderson seeks a "declaration" that the Defendants' acts violated his rights, as well as a "preliminary and permanent injunction ordering [the] Defendants . . . to stop violating prisoners' rights and allow the exercise of said rights." (Compl. at 9.)  Neither form of relief is available to him.  Declaratory relief is unavailable to adjudicate past conduct, so Anderson's request for this declaratory relief is improper.  *See Corliss v. O'Brien*, 200 F. App'x 80, 84 (3d Cir. 2006) (*per curiam*) ("Declaratory judgment is inappropriate solely to adjudicate past conduct" and is also not "meant simply to proclaim that one party is liable to another."); *see also Andela v. Admin. Office of U.S. Courts*, 569 F. App'x 80, 83 (3d Cir. 2014) (*per curiam*) ("Declaratory judgments are meant to define the legal rights and obligations of the parties in the anticipation of some future conduct.").  A declaratory judgment is also not "meant simply to proclaim that one party is liable to another." *Corliss*, 200 F. App'x at 84 (*per curiam*); *see also Taggart v. Saltz*, No. 20-3574, 2021 WL 1191628, at \*2 (3d Cir. Mar. 30, 2021) (*per curiam*) ("A declaratory judgment is available to define the legal rights of the parties, not to adjudicate past conduct where there is no threat of continuing harm.").

As for injunctive relief to order the Defendants "to stop violating prisoners' rights," first, Anderson is representing only himself in this action, not all "prisoners" in the custody of the Philadelphia Department of Prisons.  Under 28 U.S.C. § 1654, parties "may plead and conduct their own cases personally or by counsel" in the federal courts.  Section 1654 thus ensures that a person may conduct his or her own case *pro se* or retain counsel to do so.  *See Osei-Afriyie v.*

*Med. Coll. of Pa.*, 937 F.2d 876, 882 (3d Cir. 1991) ("The statutory right to proceed *pro se* reflects a respect for the choice of an individual citizen to plead his or her own cause." (citation omitted)).  Although an individual may represent himself *pro se*, a non-attorney may not represent other parties in federal court.  *See Murray ex rel. Purnell v. City of Philadelphia*, 901 F.3d 169, 170 (3d Cir. 2018).  So, Anderson cannot secure injunctive relief on behalf of others.

Second, according to Anderson's criminal docket and other public records, following his conviction and sentence, he was transferred from the custody of the Philadelphia Department of Prisons to the custody of the Pennsylvania Department of Corrections, specifically SCI Camp Hill.  *See Commonwealth v. Anderson*, No. CP-51-CR-0000016-2025 (C.P. Phila.).  Because he has been transferred, his request for injunctive relief, to the extent it pertains only to him, is moot.  *See, e.g.*, *Griffin v. Beard*, 401 F. App'x 715, 716 (3d Cir. 2010) (*per curiam*) ("An inmate's transfer from the facility complained of generally moots the equitable and declaratory claims." (quoting *Sutton v. Rasheed*, 323 F.3d 236, 248 (3d Cir. 2003)).  Accordingly, any claims for declaratory or injunctive relief will be dismissed with prejudice.

### B.      Pleading and Joinder of Claims and Parties

Anderson's Complaint describes a litany of issues that that occurred over a nearly year-long period, so it is "best described as a 'kitchen sink' or 'shotgun' complaint because it essentially seeks to bring 'every conceivable claim against every conceivable defendant.'" *Anderson v. First Premier Bank,* No. 25-5502, 2025 WL 3214776, at *6 (E.D. Pa. Nov. 17, 2025) (quoting *Talley v. Harper*, No. 14-1411, 2017 WL 413069, at *2 (W.D. Pa. Jan. 31, 2017)).  Courts have "repeatedly criticized" this type of pleading as "troublesome for many reasons," including that it "harms the plaintiff who brings it," because any "genuine dispute becomes almost impossible to discern when it is buried in pages of various allegations, some of

which may not rise to the level of a constitutional claim." *Id.* (internal quotations and citations omitted).  Federal Rule of Civil Procedure 18(a) states that "[a] party asserting a claim, . . . may join, as independent or alternative claims, as many claims as it has against an opposing party." Federal Rule of Civil Procedure 20 allows a plaintiff to join multiple defendants in one action if: (a) "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences"; and (b) "any question of law or fact common to all defendants will arise in the action."  "For courts applying Rule 20 and related rules, 'the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged.'"  *Hagan v. Rogers*, 570 F.3d 146, 153 (3d Cir. 2009) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966)).

"But this application, however liberal, is not a license to join unrelated claims and defendants in one lawsuit."  *Pew v. Little*, No. 22-1488, 2024 WL 967823, at *2 (E.D. Pa. March 6, 2024) (internal quotation marks omitted) (quoting *McKinney v. Prosecutor's Office*, No. 13-2553, 2014 WL 2574414, at *14 (D.N.J. June 4, 2014)).  "Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2."  *Williams v. Miller*, No. 25-6293, 2026 WL 209815, at *8 n.12 (E.D. Pa. Jan. 27, 2026) (quoting *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007)).  Indeed, courts "have frowned on prisoners' attempts to lump together their multifarious grievances about life in a single prison."  *McKinney*, 2014 WL 2574414, at *15.  To remedy a misjoinder, a Court may add or drop a party or sever any claims.  Fed. R. Civ. P. 21.

As described below, some of Anderson's claims are sufficiently well pleaded to proceed to service, but other allegations fail to state a claim to relief, and the Court will give Anderson an

opportunity to file an amended complaint.  Should he choose to amend, Anderson should bear in mind that the Court may sever parties or claims that are unrelated to each other into separate cases.  *See Graudins v. Retro Fitness, LLC*, 921 F. Supp. 2d 456, 467 (E.D. Pa. 2013) ("The Federal Rules of Civil Procedure give district courts broad discretion in deciding whether to sever a case by way of severing parties or claims.").

### C.    Constitutional Claims

Anderson asserts violations of his constitutional rights.  The vehicle by which federal constitutional claims may be brought in federal court is 42 U.S.C. § 1983.  "Section 1983 does not, by its own terms, create substantive rights; it provides only remedies for deprivations of rights established elsewhere in the Constitution or federal laws."  *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996); *see also Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002) (stating that "§ 1983 merely provides a mechanism for enforcing individual rights 'secured' elsewhere"); *Pappas v. City of Lebanon*, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004) ("Section 1983 is not a source of substantive rights," but is merely a means through which "to vindicate violations of federal law committed by state actors." (citing *Gonzaga*, 536 U.S. at 284-85)).  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988).

"A defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable.  *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *see also Jutrowski v. Township of Riverdale*, 904 F.3d 280, 290 (3d Cir. 2018) ("Each Government official, his or her title notwithstanding, is only liable for his or her *own* misconduct." (quoting *Iqbal*, 556 U.S. at 677) (emphasis in original)); *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir.

2020) ("Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" (quoting *Rode*, 845 F.2d at 1207)).  "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.  "Although a court can infer that a defendant had contemporaneous knowledge of wrongful conduct from the circumstances surrounding a case, the knowledge must be actual, not constructive." *Chavarriaga v. N.J. Dept. of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015) (citing *Baker v. Monroe Township*, 50 F.3d 1186, 1194 (3d Cir. 1995); *Rode*, 845 F.2d at 1201 n.6).

### 1.    Excessive Force and Failure to Intervene

Anderson alleges claims of excessive force against Defendants Foster and Bolden related to the incident on March 8, 2025, and alleges that Defendant Mendez failed to intervene to stop Foster's use of force.[4]  (*See* Compl. at 4, 7.) The Court understands that Anderson was a pretrial detainee at the time of these events.  Excessive force claims brought by convicted prisoners are analyzed under the Eighth Amendment's Cruel and Unusual Punishment Clause, but such claims brought by pretrial detainees are analyzed under the Fourteenth Amendment's Due Process Clause.  *See Kingsley v. Hendrickson*, 576 U.S. 389, 400-01 (2015); *Jacobs v. Cumberland County*, 8 F.4th 187, 193-94 (3d Cir. 2021).  The distinction is significant because the "language of the two Clauses differs, and the nature of the claims often differs." *Kingsley*, 576 U.S. at 400.  When a convicted prisoner brings an Eighth Amendment excessive force claim against a prison official, the court must consider "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillan*, 503 U.S.

---

[4]  Although the Complaint alleges that another unnamed corrections officer was present (*see* Compl. at 4), Anderson does not name or appear to assert any claims against other unknown Defendants.

11

1, 7 (1992).  The malicious-and-sadistic standard for an Eighth Amendment claim is subjective, but an objective standard is applied to a Fourteenth Amendment claim.  *See Kingsley*, 576 U.S. at 400 (explaining that the reason for the lesser standard in a Fourteenth Amendment claim is that "pretrial detainees (unlike convicted prisoners) cannot be punished at all, much less 'maliciously and sadistically'"); *Jacobs*, 8 F.4th at 194 ("In 2015, the Supreme Court clarified that the subjective Eighth Amendment standard does not apply to pretrial detainees.").

For a pretrial detainee to state a due process violation based on excessive force, he must allege plausibly that "that the force purposely or knowingly used against him was objectively unreasonable." *Kingsley*, 576 U.S. at 396-97.  The following circumstances "may bear on the reasonableness or unreasonableness of the force used: the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Id.* at 397.  Whether unreasonable force has been used against a detainee requires "careful attention to the facts and circumstances of each particular case." *Jacobs*, 8 F.4th at 194 (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).  Courts analyze such claims "from the perspective of a reasonable officer on the scene" while keeping in mind that decisions about safety and order require the expertise of correctional officers, "who must have substantial discretion to devise reasonable solutions to the problems they face." *Id.* at 195 (quoting *Kingsley*, 576 U.S. at 397 & 399).

Anderson claims that, apparently without any security problem, Defendant Foster punched him in the face repeatedly while he was handcuffed, caused his head to hit a wall and doorframe, and knocked him to the ground, which led to the placement of staples to close a cut

on his scalp and a broken jaw.  (*See* Compl. at 4.)  These allegations are sufficient to state a claim against Foster.

As to Defendant Mendez, Anderson alleges that he "looked on never interfering or interrupting [Foster's] assault." (Compl. at 4.)  In the context of an arrestee, "a police officer has a duty to take reasonable steps to protect a victim from another officer's use of excessive force." *Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir. 2002).  The Supreme Court has held that there is no material difference in the analysis of excessive force claims for arrestees under the Fourth Amendment and pretrial detainees under the Fourteenth Amendment.  *See Lombardo v. City of St. Louis*, 594 U.S. 464, 466 n.2 (2021); *see also Jacobs v. Cumberland County*, 8 F.4th 187, 195 n.6 (3d Cir. 2021) (noting the standards are "almost identical"); *see also Smith*, 293 F.3d at 650 (applying same standard to prison officials).  Because "[t]he law does not allow either [police officers or corrections officers] to condone or cover up the use of excessive force," the relevant question is whether Mendez "ignored a realistic opportunity to intervene" in Foster's assault. *Smith*, 293 F.3d at 651-52.  The Court concludes that Anderson has sufficiently stated a claim against Defendant Mendez for failure to intervene.

As to Defendant Bolden, Anderson does not allege that she had any personal involvement in Foster's use of force.  Instead, he alleges only that Bolden yelled insults and spit on him from a tier above.[5]  (*See* Compl. at 4.)  "[The] Fourteenth Amendment, which protects against

---

[5]  Although Anderson also alleges that Bolden falsely accused him of spitting on her and initiated misconduct proceedings that resulted in Anderson being found not guilty at a hearing on March 18, 2025 (Compl. at 4), the Court does not understand Anderson to lodge anything other than an excessive force claim against Bolden (*see id.* at 7).  In any event, he could not state such a claim, because "the filing of a fraudulent misconduct report and related disciplinary sanctions do not without more violate due process," *Seville v. Martinez*, 130 F. App'x 549, 551 (3d Cir. 2005) (*per curiam*), and "[d]ue process is satisfied where an inmate is afforded an opportunity to be heard and to defend against the allegedly false misconduct reports," *Thomas v. McCoy*, 467 F. App'x 94, 97 (3d Cir. 2012) (*per curiam*); *see also Smith*, 293 F.3d at 654 ("[S]o long as certain

excessive force between arrest and conviction, does not protect from verbal abuse or harassment." *Luongo v. Pa. State Police*, 156 F. Supp. 3d 599, 615 (E.D. Pa. 2016) (citation omitted).  Courts have concluded that a corrections officer's spitting on a convicted prisoner does not support a claim of excessive force under the Eighth Amendment.  *See, e.g.*, *Taylor v. Dunston*, No. 24-2424, 2024 WL 3889624, at *2 (E.D. Pa. Aug. 20, 2024) ("A single instance of a correctional officer spitting in an inmate's face does not constitute excessive force in violation of the Eighth Amendment." (citation omitted)); *see also Lorenzano v. Grove*, No. 17-53, 2017 WL 1830032, at *3 (M.D. Pa. May 5, 2017) ("Plaintiff's allegation that Grove spit on him while yelling is simply insufficient by itself to set forth a viable claim that the inmate was subjected to excessive force in violation of the Eighth Amendment.").  However, because the Fourteenth Amendment standard is objective and differs materially from the Eighth Amendment standard, the Court cannot definitively say that Anderson could not state a claim to relief based on Bolden's spitting on him.  Nonetheless, his allegation that she was "yelling insults and spitting on him" from the "top tier just above" is not sufficiently specific to state a claim to relief. (Compl. at 4.)  Those simple facts do not allow the Court to draw a reasonable inference that Bolden "purposely or knowingly" used force against Anderson in a way that "was objectively unreasonable."  *Kingsley*, 576 U.S. at 396-97.  Anderson will be granted leave to amend this claim to provide more factual detail.  *See, e.g.*, *Youngs v. Orange Cnty. Sheriffs Org.*, No. 22-4918, 2022 WL 4124796, at *4 (S.D.N.Y. Sept. 2, 2022) (permitting leave to amend bare allegation that a corrections officer spit on pretrial detainee).

---

procedural requirements are satisfied, mere allegations of falsified evidence or misconduct reports, without more, are not enough to state a due process claim.").

### 2.    Deliberate Indifference to Medical Needs

Anderson alleges that after the surgery on his jaw, he was denied a prescribed special diet.  (Compl. at 5.)  He also alleges "[a] lack of medical treatment" that led to an infection.  (*Id.* at 4.)   And he alleges that at some unspecified point he missed a doctor's appointment and his "health and recovery [were] in danger [of] being neglected."  (*Id.* at 6.)  The Court understands these as claims for deliberate indifference to his medical needs.  *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994).  As it appears that Anderson was a pretrial detainee at the time of the events in question, the Fourteenth Amendment governs his claims.  *See Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005).  However, the standard for claims related to a prisoner's medical needs is essentially the same under either the Eighth Amendment or Fourteenth Amendment for purposes of the analysis.  *See Moore v. Luffey*, 767 F. App'x 335, 340 n.2 (3d Cir. 2019) (citing *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 581-82 (3d Cir. 2003)); *Parkell v. Morgan*, 682 F. App'x 155, 159-60 (3d Cir. 2017) (*per curiam*).

Deliberate indifference to medical needs "can include deprivation of medically appropriate meals."  *Walker v. Hensley,* No. 08-0685, 2009 WL 5064357, at *10 (E.D. Pa. Dec. 23, 2009) (first citing *Robles v. Coughlin,* 725 F.2d 12, 16 (2d Cir. 1983); then citing *Laufgas v. Speziale,* No. 04-1697, 2006 WL 2528009, at *5 (D.N.J. Aug. 31, 2006)).  "Whether an inmate has a legitimate, medically prescribed diet is a question wholly within the province of the prison administration."  *Laufgas*, 2006 WL 2528009, at *5 (citation omitted).  "There is a cognizable claim under § 1983 when prison officials are aware of the detainee's need for a special diet," but fail to provide it.  *Jones v. Artis*, No. 13-5734, 2015 WL 3622695, at *3 (D.N.J. June 10, 2015) (cleaned up) (first quoting *Laufgas*, 2006 WL 2528009, at *5; then citing *Walker*, 2009 WL 5064357, at *10).

15

Anderson alleges that, while he was housed at CFCF, Bruce Sobers "refused to update [his] diet and refused to see [him] for medical screening concerning health issues," which "resulted in less than adequate meals both painful and difficult to consume." (*Id.* at 5.)  He also alleges that Defendants Hawkins, Brapham, and Watson were responsible for delivering his meals at CFCF and denied him his prescribed diet. (*Id.* at 2-3, 6.)  The Court concludes that these allegations are sufficient to proceed to service.

However, the remainder of Anderson's claims that a lack of treatment led to an infection, that he missed a doctor's appointment, and that his "health and recovery [were] in danger [of] being neglected" do not state a claim to relief, because Anderson does not plead those claims with any specificity and he does not tie them to the actions or personal involvement of any of the named Defendants.  *See Iqbal*, 556 U.S. at 676; *Jutrowski*, 904 F.3d at 290.  Moreover, to the extent that Anderson asserts a claim against Defendant Kilson related to his diet, it appears that claim is based solely on Kilson's involvement in the grievance process (*see* Compl. at 5, 7), so Anderson fails to state a claim to relief against Kilson.  *See Curtis v. Wetzel*, 763 F. App'x 259, 263 (3d Cir. 2019) (*per curiam*) (explaining that participation in the grievance process does not, without more, establish involvement in the underlying constitutional violation).  Anderson will be given leave to amend these claims to provide more factual detail.

### 3.    Failure to Protect from Inmate Violence

Anderson alleges that at various times he asked to be placed in protective custody because he feared for his life and safety, but his requests were denied.  Detainees have "a Fourteenth Amendment right to 'security from physical assault by fellow prisoners.'  Thus prisons have a duty to protect inmates from other inmates' violence." *Hightower v. City of Philadelphia*, 130 F.4th 352, 356 (3d Cir. 2025) (first quoting *Davidson v. O'Lone*, 752 F.2d

817, 821 (3d Cir. 1984); then citing *Farmer v. Brennan*, 511 U.S. 825, 833 (1994)). "A prison violates that duty if it (1) creates conditions that pose a substantial risk of serious harm and (2) is deliberately indifferent to inmate health or safety."[6] *Id.* (cleaned up) (quoting *Farmer*, 511 U.S. at 834). However, not "every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer*, 511 U.S. at 834.

A prison official demonstrates deliberate indifference to the risk of inmate-on-inmate violence if, before an attack, the official should know that an inmate faces "an excessive risk of harm" from another prisoner but does nothing to prevent the assault. *Bistrian v. Levi*, 696 F.3d 352, 369 (3d Cir. 2012), *abrogated on other grounds as recognized in Hightower*, 130 F.4th at 357. Deliberate indifference may also exist if, when an attack occurs, an official has "a realistic and reasonable opportunity to intervene" but "simply refuse[s] to do so." *Id.* at 371 (quoting

---

[6] The *Hightower* Court noted that "[h]ow this two-step test works for pretrial detainees' Fourteenth Amendment claims is not entirely clear in this circuit," and pointed to agreement that the Eighth Amendment deliberate indifference standard is subjective, but a potential circuit split over whether the Fourteenth Amendment standard is subjective or objective. 130 F.4th at 356. There, because the plaintiff could not state a claim for municipal liability, it was not necessary to take a position on the relevant standard. *Id.* My own reading of *Kingsley* is in line with the Second, Fourth, Sixth, Seventh, and Ninth Circuits. *Short v. Hartman*, 87 F.4th 593, 610 (4th Cir. 2023), ("recogniz[ing] that *Kingsley*'s objective test extends to all pretrial detainee claims under the Fourteenth Amendment . . . for deliberate indifference to an excessive risk of harm"); *Brawner v. Scott Cnty.*, 14 F.4th 585, 596 (6th Cir. 2021) ("agree[ing] with" several other circuits that Kingsley applies to pretrial deliberate indifference claims); *Miranda v. Cnty. of Lake*, 900 F.3d 335, 352 (7th Cir. 2018) ("We see nothing in the logic the Supreme Court used in *Kingsley* that would support . . . dissection of the different types of claims that arise under the Fourteenth Amendment's Due Process Clause."); *Darnell v. Pineiro*, 849 F.3d 17, 35 (2d Cir. 2017) ("A pretrial detainee may not be punished at all under the Fourteenth Amendment, whether through the use of excessive force, by deliberate indifference to conditions of confinement, or otherwise."); *Castro v. Cnty. of L.A.*, 833 F.3d 1060, 1070 (9th Cir. 2016) (*en banc*) ("We are persuaded that *Kingsley* applies, as well, to failure-to-protect claims brought by pretrial detainees . . . . Jailers have a duty to protect pretrial detainees from violence at the hands of other inmates, just as they have a duty to use only appropriate force themselves.").

*Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir. 2002)).

The Court understands Anderson to allege that, at some point after his second stay in the PHSW, he was in protective custody but was transferred out.[7] (Compl. at 4.) Anderson alleges that at some later point he told Lieutenant Flippen of his "fear for safety because of pending criminal charges and staff and inmate misconduct," but Flippen "denied protective custody," and then Anderson had an "altercation" on November 21, 2025, and "was forced to defend himself," after which he was placed in the RHU. (*Id.* at 5.) However, Anderson does not name Flippen as a Defendant or lodge any claim against him. Even if he had, these allegations are not sufficiently specific to state a claim to relief, because he does not include any details about what he communicated to Flippen or anyone else. That is, Anderson does not plead the specific reasons why he feared for his safety, any specific person or group of people he feared, or how his fear related to the "altercation" on November 21. The Court cannot reasonably draw any inference from Anderson's references to his "pending criminal charges" because he does not explain which charges, nor does he make any specific allegations that the prison administration, any corrections officer, or any fellow inmate or inmates were aware of the nature of such charges.

Anderson then states that he filed a grievance concerning protective custody and was told by the warden that he had to serve his time in the RHU before he could be placed in protective custody. (*Id.*) He claims that, while he was housed in the RHU, he spoke to CO T. Adams[8] and then to Defendants Abrahams and Bishop about protective custody and was denied again. (*Id.* at 6.) However, the next "incident where Anderson was again forced to defend himself" occurred

---

[7] He asserts that this transfer was "in retaliation for complaints," but provides no specifics. (Compl. at 4.) This assertion is discussed further below.

[8] CO T. Adams is not named as a Defendant. (See Compl. at 2-3, 7-8.)

two days after he was transferred out of the RHU and back to his cell block in CFCF, and he does not specify that he spoke to any named Defendant about protective custody there. (*Id.*) He has not alleged that any Defendant knew that he faced "an excessive risk of harm" from another prisoner and did nothing to prevent an assault, or that any Defendant had "a realistic and reasonable opportunity to intervene" and failed to do so. *Bistrian*, 696 F.3d at 369, 371. Here again, vague references to his pending charges are insufficient; he must support his claims with specific factual allegations. Accordingly, Anderson has not stated a claim for failure to protect.[9]

### 4.    Access to Courts and Attorney

Anderson makes four general allegations about purported infringements on his access to courts and contact with his attorney: (1) that Defendants Coley and McManus confiscated his legal papers and held them while he was in the RHU; (2) that he "notified Lt. McKenzie of need

---

[9] Anderson also appears to include Defendants Prifti and Harris in his claims for failure to protect. (*See* Compl. at 7.) However, his only factual allegations involving these two Defendants relate to their conducting his misconduct hearing on December 15, following the second "self-defense" incident. (*See id.* at 6.) He alleges only that Prifti found him guilty of misconduct and Harris was "present" as the "disciplinary coordinator," then Harris "provided inmate disciplinary appeal" that "was never answered." (*Id.*) "Generally, prisons may sanction a pretrial detainee for misconduct that he commits while awaiting trial, as long as it is not a punishment for the 'underlying crime of which he stands accused.'" *Kanu v. Lindsey*, 739 F. App'x 111, 116 (3d Cir. 2018) (quoting *Rapier v. Harris*, 172 F.3d 999, 1003-06 (7th Cir. 1999)). "[T]he imposition of disciplinary segregation [on pretrial detainees] for violation of prison rules and regulations cannot be imposed without providing the due process protections set forth in *Wolff v. McDonnell*, 418 U.S. 539 (1974)." *Kanu*, 739 F. App'x at 116. Such protections "include the right to receive written notice of the charges at least 24 hours before the hearing, the opportunity to present witnesses and documentary evidence, and a written statement of the reasons for the disciplinary action taken and the supporting evidence." *Id.* (citing *Wolff*, 418 U.S. at 563-66); *see also Stevenson v. Carroll,* 495 F.3d 62, 70 (3d Cir. 2007). Anderson does not allege that he was denied any of these protections. However, given his vague allegation that his "appeal" had not been answered in the two months between filing that appeal and submitting his Complaint to the Court, and because he does not include any specific facts about how these two Defendants may have been involved in denying his requests for protective custody, in an abundance of caution, he will be given leave to amend his claims against these Defendants.

19

to access courts, contact lawyer, and access law library"; (3) that both his ability to contact his lawyer and his "attempt to proceed *pro se*" were restricted; (4) that he was either denied time in the law library or found the amount of time he was granted in the law library inadequate. (Compl. at 5-6.)  Anderson provides no details about any claims or cases that his "legal papers" related to or any legal proceeding in which he was represented by counsel or attempted to proceed *pro se*, and his allegations are inconsistent as to his ability to contact his lawyer and access the law library.  As noted above, it appears that Anderson's reference to a "trial" from December 5 to December 11, 2025, relates to criminal proceedings that resulted in his conviction.  *See Commonwealth v. Anderson*, No. CP-51-CR-0000016-2025 (C.P. Phila.). During the relevant period, Anderson also had a separate criminal proceeding that included an interlocutory appeal.  *See Commonwealth v. Anderson*, No. CP-51-CR-0006907-2023 (C.P. Phila.), No. 2868 EDA 2024 (Pa. Super. Ct.).  It appears from those dockets that he was represented by counsel in both cases.[10]

---

[10]  Anderson commenced a separate civil action through counsel in state court in July 2025, concerning another, earlier assault on him in CFCF; that case was later removed by the Defendants to this Court and remains pending.  *See Anderson v. City of Philadelphia*, No. 26-0037 (E.D. Pa.).  He also seems to assert at one point that his confiscated "legal papers" could have related to his special diet.  (*See* Compl. at 5.)  To the extent that his claims about access to the courts or his lawyer concern civil claims stemming from purported injuries he sustained while in detention or other conditions of confinement—as opposed to his criminal proceedings— such claims fall outside the scope of Anderson's Sixth Amendment right to counsel.  "Under the First and Fourteenth Amendments, prisoners [and pretrial detainees] retain a right of access to the courts."  *Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008).  "A prisoner making an access-to-the-courts claim [under the First and Fourteenth Amendments] is required to show that the denial of access caused actual injury."  *Jackson v. Whalen*, 568 F. App'x 85, 87 (3d Cir. 2014) (*per curiam*) (quoting *Lewis v. Casey*, 518 U.S. 343, 350 (1996)).  This is because the right of access to the courts "rest[s] on the recognition that the right is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court."  *Christopher v. Harbury*, 536 U.S. 403, 415 (2002).  In other words, a prisoner claiming that he was denied access to the courts must allege an injury traceable to the conditions of which he complains.  *See Diaz v. Holder*, 532 F. App'x 61, 63 (3d Cir. 2013) (*per curiam*) (affirming dismissal of denial of access claims where plaintiff failed to tie alleged deficiencies in library to harm in underlying

20

"Under the Sixth Amendment, a pretrial detainee has a right to utilize counsel to defend against a criminal case that the state has brought against him." *Prater v. City of Philadelphia*, No. 11-1618, 2015 WL 3456659, at *4 (E.D. Pa. June 1, 2015) (on remand) (citing *Benjamin v. Fraser*, 264 F.3d 175, 186 (2d Cir. 2001)). With respect to restrictions on attorney contact with clients, "the Supreme Court has held that inmates must have a reasonable opportunity to seek and receive the assistance of attorneys and that prison regulations and practices that unjustifiably obstruct the availability of professional representation are invalid." *Id.* at 184 (cleaned up) (quoting *Procunier v. Martinez*, 416 U.S. 396, 419 (1974)). Thus, where an institutional restriction impedes a pretrial detainee's access to criminal counsel, "the practice must be evaluated in the light of the central objective of prison administration, safeguarding institutional security." *Id.* at 187 (quoting *Bell v. Wolfish*, 441 U.S. 520, 547 (1979)). A prison regulation restricting a pretrial detainee's contact with his attorney will be unconstitutional where it "unreasonably burden[s] the inmate's opportunity to consult with his attorney and to prepare his defense." *Id.* (quoting *Wolfish v. Levi*, 573 F.2d 118, 133 (2d Cir. 1978)).

---

action). So, such access-to-courts claims arise "in two types of cases, challenges (direct or collateral) to . . . sentences and conditions of confinement." *Monroe*, 536 F.3d at 205; *Shane v. Fauver*, 209 F. App'x 87, 89 (3d Cir. 2006) (*per curiam*) ("[T]he actual injury requirement is not met by every type of frustrated legal claim; constitutional protections are applied only to a prisoner's direct or collateral attack on his or her sentence, or challenges to prison conditions"). In general, an actual injury occurs when a prisoner demonstrates that a "nonfrivolous" and "arguable" claim was lost because of the denial of access to the courts. *Christopher*, 536 U.S. at 415. "[T]he underlying cause of action, . . . is an element that must be described in the complaint." *Id.* Furthermore, the right to access the courts may be satisfied if the plaintiff has an attorney. *Diaz*, 532 F. App'x at 63 (citing *Bounds v. Smith*, 430 U.S. 817, 831 (1977) and *Peterkin v. Jeffes*, 855 F.2d 1021, 1042 (3d Cir. 1988)); *see also Prater v. City of Philadelphia*, 542 F. App'x 135, 137 n.4 (3d Cir. 2013) (*per curiam*). If Anderson's claims of access to the courts or his attorney relate to a civil action, he has not described any actual injury resulting from any specific Defendant's acts, and thus has failed to state a claim to relief.

A claim of unreasonable interference with Sixth Amendment right to counsel does not require a showing of actual injury. *See Benjamin*, 264 F.3d at 185 (pretrial detainee has standing to assert unreasonable interference with Sixth Amendment right even if the interference did not result in "actual injury"). Although the Third Circuit has not ruled on this issue in a published opinion, the court in *Prater* noted that district court had failed to address prisoner's Sixth Amendment interference with right to counsel claim and disagreed with district court's implicit conclusion that the claim required a showing of actual injury. *Prater*, 542 F. App'x at 139, n.5 (affirming in part on alternate basis) (citing *Benjamin*, 264 F.3d at 185).

Anderson's allegations are too generalized to state a claim to relief. To the extent that he seeks to assert that he was denied access to his attorney in relation to his criminal proceeding, his factual detail is limited and confusing as to how and when he was able to interact with his attorney and how any purported restrictions related to his placement in the RHU. In short, he has not presented any cognizable claim of access to courts or his attorney to which any Defendant could respond on the merits. *Garrett v. Wexford Health*, 938 F.3d 69, 94 (3d Cir. 2019). These claims will be dismissed and he will be granted an opportunity to plead more detailed facts in an amended complaint.

### 5.    Retaliation

Finally, Anderson alleges at various points that actions taken against him were retaliatory, such as his transfer out of protective custody, later denials of protective custody, the withholding of his special diet, the confiscation of his legal papers, and "threats and harassment" against him. In order to state a plausible First Amendment retaliation claim, a prisoner must allege that: (1) he engaged in constitutionally protected conduct; (2) he suffered an adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights;

22

and (3) the constitutionally protected conduct was "a substantial or motivating factor" for the adverse action. *See Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001); *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003); *Coit v. Garman*, 812 F. App'x 83, 86 (3d Cir. 2020) (*per curiam*). "An adverse consequence 'need not be great in order to be actionable[;]' rather, it need only be 'more than *de minimis*.'" *Watson v. Rosum*, 834 F.3d 423, 423 (3d Cir. 2016) (quoting *McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006)) (alterations in original). "[B]eing placed in lockdown, being moved to restricted housing, and being issued misconduct charges are more than '*de minimis*' adverse actions." *See Palmore v. Hornberger*, 813 F. App'x 68, 70 (3d Cir. 2020) (*per curiam*) (quoting *McKee*, 436 F.3d at 170); *see also Mitchell*, 318 F.3d at 530-31 ("Mitchell's allegation that he was falsely charged with misconduct in retaliation for filing complaints against Officer Wilson implicates conduct protected by the First Amendment."). The timing of the allegedly retaliatory behavior relative to the constitutionally protected conduct may establish a causal link between the two for purposes of establishing motivation. *See Watson*, 834 F.3d at 422. *See also Oliver v. Roquet*, 858 F.3d 180, 195 (3d Cir. 2017) ("Absent supporting facts that make it reasonable to draw an inference of retaliation, [] conclusory assertions of a cause-and-effect relationship between specific protected activities and a later adverse action are insufficient to plead causation.").

A prisoner's filing of a grievance is constitutionally protected conduct. *See Robinson v. Taylor*, 204 F. App'x 155, 157 (3d Cir. 2006) (citing *Mitchell*, 318 F.3d at 530; *Davis v. Goord*, 320 F.3d 346, 35-53 (2d Cir. 2003)). However, a prisoner must allege a causal link between the filing of a grievance and the alleged act of retaliation. *See, e.g.*, *Hammonds v. Headman*, 645 F. App'x 149, 152 (3d Cir. 2016) (*per curiam*) ("[B]ecause Hammonds' conclusory allegations fail to raise the required inference of a causal link between his grievance and the filing of misconduct

23

reports, he failed to state a retaliation claim."); *Thomas v. Brinich*, 579 F. App'x 60, 62 (3d Cir. 2014) (*per curiam*) ("Thomas' claims against Dr. Ahner consist of conclusory and somewhat cryptic allegations that Dr. Ahner took Thomas off medication, directed others to do the same, and ordered others to create an extreme and stressful prison environment in retaliation for his 2001 lawsuit.  The complaint lacks all detail as to the time, place, or manner surrounding the alleged deprivation and it is entirely unclear from the allegations what level of involvement, if any, Dr. Ahner had in Thomas' care").

Anderson fails to state any retaliation claim, largely because he merely asserts in conclusory fashion that acts were retaliatory, without any detail as to the timing of the acts or any other facts to suggest a causal link between his own protected conduct and the acts of any Defendant.  *See Martinez v. UPMC Susquehanna*, 986 F.3d 261, 266 (3d Cir. 2021) ("A plaintiff cannot survive dismissal just by alleging the conclusion to an ultimate legal issue.").  So, his retaliation claims will be dismissed without prejudice to amendment.

## IV.    CONCLUSION

For the foregoing reasons, pursuant to 28 U.S.C. § 1915, the Court will grant Anderson leave to proceed *in forma pauperis* and dismiss the following claims on statutory screening: (1) the claim against Defendant Bolden for excessive force; (2) any generalized claim of deliberate indifference against unspecified Defendants, and any claim against Defendant Kilson for deliberate indifference to medical needs or related to Kilson's involvement in the grievance process; (3) any claims for failure to protect against inmate violence; (4) any claims for denial of access to courts or his attorney; and (5) any retaliation claims.  The Court concludes that Anderson's claims against Defendant Foster for excessive force, Defendant Mendez for failure to intervene, and Defendants Sobers, Hawkins, Brapham, and Watson for deliberate indifference

24

based on a failure to provide his special diet are all sufficiently pleaded to proceed to service. However, Anderson will be granted an opportunity to file an amended complaint to cure the defects in the dismissed claims. If he chooses to file an amended complaint, that document will supersede the original Complaint, meaning that the original Complaint will be a nullity, and so Anderson **must** re-plead all of his claims with supporting facts in a single amended complaint. Any claim, including those found here to be plausible, will be deemed forfeited if it is not included in the amended complaint. If Anderson chooses not to amend, the Court will issue further orders as necessary to effect service of the claims for excessive force, failure to intervene, and deliberate indifference based on his special diet. An appropriate order follows, which provides more information about amendment.[11]

---

[11] Anderson's Motion to Appoint Counsel (ECF No. 4) will be denied without prejudice to renewal after the Court has had an opportunity to screen any amended complaint that Anderson might file.